IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| JANET LYNN LANIER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04-1865-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| CITY OF WOODBURN, OREGON a municipal corporation, and LINDA SPRAUER, individually and as Library Director of the Woodburn Public Library, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

Don H. Marmaduke
Steve M. Wilker
Paul W. Conable
Tonkon Torp LLP
1600 Pioneer Tower
888 S. W. Fifth Avenue
Portland, Oregon 97204-2099

Attorneys for Plaintiff

> Karen O'Kasey
> Amy L. Buckler
> Hoffman, Hart & Wagner, LLP
> Twentieth Floor
> 1000 S. W. Broadway
> Portland, Oregon  97205
>
>     Attorneys for Defendants

KING, Judge:

Plaintiff Janet Lynn Lanier alleges violations of the Fourth Amendment, Fourteenth Amendment, and Article I, Section 9 of the Oregon Constitution, arising out of the City of Woodburn's (the "City") conditions of employment, and Linda Sprauer's implementation of those conditions of employment–pre-employment drug and alcohol screening and the execution of a "Personal History Inquiry Authorization, Release and Waiver" form ("Release and Waiver Form").  Before me is Plaintiff's Motion for Summary Judgment (#11), Defendants' Motion for Summary Judgment (#16), and Plaintiff's Motion to Strike (#31).  For the following reasons, I deny in part and grant in part defendants' motion for summary judgment, grant in part and deny in part plaintiff's motion for summary judgment, and deny plaintiff's motion to strike.

## BACKGROUND

On February 5, 2004, plaintiff applied for a "library page" position, which is a part-time, "at-will" position considered to be entry-level.  Defendant Linda Sprauer, head of the library department, gave plaintiff a conditional offer of employment on February 23, 2004.  Consistent with the City's policy, the City conditioned its offer of employment on a pre-employment drug and alcohol screening and upon plaintiff executing a Release and Waiver Form.  This was done

solely as a matter of policy and Sprauer had no particular suspicion that plaintiff had a problem with drugs or alcohol.

The City adopted this policy in January of 2002. The policy sets forth a post-offer, pre-employment drug and alcohol screening requirement as follows:

> (2) *Drug and alcohol tests:* As a drug-free workplace (see section 11.17), The City of Woodburn requires a pre-employment drug and alcohol screen for all prospective applicants. The candidate of choice for a City position must successfully pass the drug and alcohol screen as a condition of the job offer. The confirmed presence of any illegal drug or alcohol in a urine sample will be cause for disqualifying an applicant.

O'Kasey Aff., Sprauer Depo., Ex. 1 at 12. The City's Personnel Policies and Procedures Manual also identifies a requirement for a background check of prospective employees.

Plaintiff wrote Sprauer that she wanted to accept the position of library page at the Woodburn Public Library, but would not submit to the post-offer, pre-employment drug or alcohol screening test because she believed it violated her constitutional and civil rights. Plaintiff also refused to execute the Release and Waiver Form. The form states in relevant part:

> To facilitate the City of Woodburn's assessment of my fitness to serve in the position of Library Page, I hereby authorize the City of Woodburn, its officers, agents, assigns and employees to contact previous employers and other sources of information and to request, read, review or photocopy any and all information the City deems necessary to lawfully investigate my background for this position. This information may include, but is not limited to, my academic, residential, achievement, performance, attendance, disciplinary, employment history, and criminal history information.
>
> I hereby exonerate, release and discharge the City of Woodburn, its officers, agents and employees from any liability or damages that may result from furnishing the information requested, including any liability or damage pursuant to any state or federal laws.
>
> I specifically and permanently waive any rights I may have to review or inspect any and all of the information developed in this investigation.
>
> Buckler Aff. Ex. A.

Page 3 - OPINION AND ORDER

Plaintiff did provide and offered to provide additional references regarding her background to Sprauer and authorized Sprauer to contact the previous employers, academic institutions, and references in her employment application and check any public information available. Sprauer responded that the drug and alcohol test and the Release and Waiver Form were required. Plaintiff wrote back to Sprauer advising her that she was seeking legal advice and that she still hoped to work at the library. On March 30, 2004, Sprauer formally withdrew plaintiff's offer of employment.

The library page at the Woodburn Public Library is responsible for supervising juveniles and is occasionally at the desk in the youth services area of the library. The youth services desk area houses materials for children up through teenage youth for the community. Library page is the lowest job classification in the Woodburn Public Library; it is a part-time, minimum wage, non-union, no-benefits position. The job, which requires manual tasks like shelving books, is usually filled by high school students.

Sprauer supported the addition of the drug and alcohol screening policy to the handbook because the community has numerous drug problems and the building is open to the public, including children. In adopting the drug and alcohol policy, the department heads at the City mentioned their experiences with employees who had been under the influence of either drugs or alcohol on the job and how it had a negative impact on their performance.[1] They felt it should apply to all employees and that the distinction between safety-sensitive and other employees should not be made in the manual. The City's drug and alcohol testing program does not apply to current employees of the City.

---

[1] Plaintiff admits this fact, but filed a Motion to Strike the evidence upon which it relies.

Page 4 - OPINION AND ORDER

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

I. Plaintiff's Motion to Strike Evidence Submitted by Defendants

Plaintiff seeks to strike evidence submitted by defendant, arguing it is hearsay testimony. Specifically, defendants offer evidence, in the form of Matthew Smith's deposition testimony, of a history of City employees using drugs. The testimony offered by defendants is as follows:

> Q: Do you recall anything about the discussion that led to the striking out of that provision [testing for only safety-sensitive employees]?
>
> A: In relatively vague terms, I do recall that department heads mentioned their experiences with employees who had been under the influence of either drugs or alcohol on the job and how it had a negative impact on their performance, and I don't remember–it was fairly close to being unanimous–if not unanimous–that we strike this. They felt it should apply to all employees. They felt the distinction between safety sensitive and other employees shouldn't be made in the manual. But above and beyond that, I can't remember exact specifics.

Buckler Aff., Ex. C, Smith Depo. at 43.

According to plaintiff, Smith has testified as to the out of court statements of department heads, and defendants offer Smith's testimony for the truth of the matter asserted–there were

employees under the influence of alcohol or drugs, and alcohol or drugs negatively affected employee performance.

Defendants respond that the testimony is not hearsay. Defendants are not offering Smith's testimony to show employees were actually under the influence of drugs or alcohol; instead, Smith testifies as to what department heads believed was occurring such that department heads were motivated to change the policy to apply to positions other than safety-sensitive jobs.

I find that the evidence is offered under the state of mind exception to the hearsay rule, and therefore I deny plaintiff's motion to strike. See Fed. R. Evid. 803(3).

II. <u>Defendants' Conditions on the Offer of Employment</u>

Plaintiff challenges the City's drug and alcohol testing program and the City's Release and Waiver Form. With regard to the latter, plaintiff specifically takes issue with the requirement that prospective employees waive the right to review or challenge background information collected by the City, and waive any claims against the City for liability or damages resulting from the furnishing of that information.

    A. <u>Whether the City's Drug and Alcohol Testing Program Violates the Fourth Amendment</u>

Plaintiff alleges the City's drug and alcohol testing policy violates the Fourth Amendment of the United States Constitution, as well as under Article I, Section 9 of the Oregon Constitution. Both provisions govern searches and seizures, and Article I, Section 9 is reviewed under the same standards as the Fourth Amendment. State v. Flores, 280 Or. 273, 280-81 570 P.2d 965 (1977) ().

The touchstone for determining the constitutionality of a search is its reasonableness, which requires balancing the intrusiveness of the search against its advancement of a legitimate

government interest. Board of Education of Independent School Dist. No. 92 of Pottawatomie County v. Earls, 536 U.S. 822, 828-29 (2002). Normally, reasonableness under the Fourth Amendment requires individualized suspicion. Chandler v. Miller, 520 U.S. 305, 313 (1997). When the search is not based on individualized suspicion, "the proffered special need for drug testing must be substantial–important enough to override the individual's acknowledged privacy interest, sufficiently vital to suppress the Fourth Amendment's normal requirement of individualized suspicion." Id. at 318. The Supreme Court directs courts to "undertake a context-specific inquiry, examining closely the competing private and public interests advanced by the parties." Id. at 314.

The City claims it has a legitimate interest in having a drug-free workplace. Based on previous experience, department heads adopted the policy because they were concerned about employees under the influence of drugs. In addition, the City contends its interest is legitimate in light of the hazards of drug problems in the workplace–running the gamut from absenteeism to potential liability for employee actions. Balancing these interests against the fact that job applicants have a lower expectation of privacy than current employees and can choose not to apply for a position requiring drug testing, the City asserts its drug and alcohol screening does not violate the Fourth Amendment.

Plaintiff argues that the only substantial special interest supporting drug testing is public safety, and the City's policy applies to all applicants who receive offers, regardless of whether the position is safety-sensitive. Plaintiff also challenges the evidence forming the basis for the City's statement that department heads adopted the policy because they were concerned about employees under the influence of drugs. According to plaintiff, a general desire to have a drug-free workplace is not a sufficiently legitimate interest.

Page 7 - OPINION AND ORDER

Plaintiff relies principally on Chandler and on Baron v. City of Hollywood, 93 F. Supp. 2d 1337 (S.D. Fla. 2000), while defendants cite Willner v. Thornburgh, 928 F.2d 1185 (D.C. Cir. 1991) and Loder v. City of Glendale, 14 Cal. 4th 846, 927 P.2d 1200 (Cal. 1997). After a review of these cases, I address whether the City has articulated a sufficiently important interest to justify pre-employment, post-offer drug screening, and then I examine the privacy interests of job applicants.

In Chandler, the Supreme Court struck down a Georgia statute requiring candidates for state office to undergo a drug test; the statute violated the Fourth Amendment. The Court pointed out that Georgia "asserts no evidence of a drug problem among the State's elected officials, those officials typically do not perform high-risk, safety-sensitive tasks, and the required certification immediately aids no interdiction effort. The need revealed, in short, is symbolic, not 'special,' as that term draws meaning from our case law." Chandler, 520 U.S. at 321-22. Protecting the state's image was not a constitutionally sufficient interest. Id. at 321.

The Court also reviewed its precedent to evaluate what other rationales constitute important governmental interests. In Skinner v. Railway Labor Executives' Assn., 489 U.S. 602, 628, 630 (1989), the government had a vital interest in drug testing rail employees involved in train accidents or who violated certain safety rules, both for safety reasons and for collecting information about the causes of train accidents. In National Treasury Employees v. Von Raab, 489 U.S. 656, 674 (1989), the drug testing program was implemented by an agency with an "almost unique mission" of drug interdiction, so employees involved in drug interdiction or employees who carried firearms could constitutionally be required to submit to a drug test. In Vernonia School Dist. 47J v. Acton, 515 U.S. 646, 663, 648 (1995), a random drug testing

program for high school students was necessary due to the "immediate crisis" of "a sharp increase in drug use" in the school district.

In Baron, the court found unconstitutional a policy requiring applicants for jobs with the City of Hollywood, Florida to undergo a drug test after receiving a conditional offer. The City had produced no evidence of prior use among its employees. In addition, the court stated:

> In light of *Chandler*, the Court concludes that the City's need is merely 'symbolic,' and therefore insufficient to establish a special need justifying drug testing . . . . The City has not identified any jobs involving the type of 'high-risk, safety-sensitive tasks' with potential for immediate injury to others that would justify the need for testing.

Baron, 93 F. Supp. 2d at 1341-42 (footnote omitted).

In contrast, in Willner, the court upheld a drug testing regime for prospective employees. In evaluating whether the government's interest was legitimate, the court focused on an employer's need to adequately vet applicants. Unlike a current employee, a job applicant is a stranger to a new employer. Willner, 928 F.2d at 1193 ("The government's interest in detecting drug use is substantial at the pre-employment stage because . . . the applicant is an outsider").

In addition, defendants urge me to rely on a decision issued by the Supreme Court of California, which, like the court in Willner, determined that an employer has a greater interest in testing prospective employees for drug use than it does current employees. Loder, 927 P.2d at 1222. The court stated,

> In light of the well-documented problems that are associated with the abuse of drugs and alcohol by employees–increased absenteeism, diminished productivity, greater health costs, increased safety problems and potential liability to third parties, and more frequent turnover–an employer, private or public, clearly has a legitimate (i.e. constitutionally permissible) interest in ascertaining whether persons to be employed in any position currently are abusing drugs or alcohol.

Id. at 1222-23 (footnote omitted).

Both Loder and Willner were decided prior to Chandler, and in neither case did the court explore the government's actual prior experience with employees and drug use. Importantly, Chandler specifically identified this factor as a helpful one. The Court stated, "A demonstrated problem of drug abuse, while not in all cases necessary to the validity of a testing regime, see *Von Raab*, . . . would shore up an assertion of special need for a suspicionless general search program." Chandler, 520 U.S. at 319.

Here, although defendants claim they adopted the policy in response to concerns about employee drug use, they offer no concrete evidence to support their assertion. As discussed above, Smith testified that he recalled "in relatively vague terms" that department heads talked about their experiences of drugs and alcohol affecting the performance of employees, but that evidence was offered not for the truth of the matter asserted. In fact, Sprauer testified that in her 33 years with the library there was only one instance of an employee with a drug or alcohol problem:

> Q: Now, you said that the community has had numerous drug problems. In your 33 years in the Woodburn Public Library, has the staff or employees of the Woodburn Library Department had numerous drug problems?
>
> A: Not numerous. I have had a few instances.
>
> Q: And I'm not asking you to name names or invade anyone's privacy. But you are suggesting that you've had incidents in the past where you have had to discipline existing employees for drug and alcohol abuse?
>
> A: I had an existing employee who, two different times, went into a drug–alcohol rehabilitation program.
>
> Q: Other than that–or those incidents–what other drug or alcohol problems have you had–again within the staff and employees of the City of Woodburn Public Library?
>
> A: None that I recall.

Supp. Wilker Dec. Ex. 5, Sprauer Depo. at 31-32. This is not sufficient evidence of a concrete drug problem to warrant drug testing for all prospective employees.

Without concrete evidence of a drug problem, the City must point to another special need for testing all prospective employees. Chandler foreclosed defendants' argument that they have an interest in a drug-free workplace; merely desiring to preserve a certain image is not a constitutionally sufficient rationale. See Chandler, 520 U.S. at 321. Furthermore, unlike Skinner or Von Raab, the City's policy is not directed at positions that involve safety-sensitive tasks, or involve interdiction of drugs. While there may be governmental interests besides these that would meet the special needs test, the City requires all applicants who receive job offers to take a drug test without regard to the particularized circumstances of the job.

Finally, I am not convinced that the City's interest in further scrutinizing an applicant by way of a drug test–to save costs in hiring and training, to ensure productivity, and to avoid third party liability–is a sufficiently special need under Chandler. However, even if it is, it is not a strong enough government interest to outweigh the applicant's reasonable expectation of privacy, as I explain below.

Since plaintiff does not address in detail the privacy interests at issue here, I assume that like the drug test at issue in Chandler the testing method is "relatively noninvasive." Chandler, 520 U.S. at 318. Nevertheless, although the Willner and Loder courts found the government's interest in detecting drug use at the pre-employment stage outweighed the privacy interests of the applicant, both courts noted that "decreasing levels of intrusiveness require decreasing levels of justification." Willner, 928 F.2d at 1188; Loder, 927 P.2d at 1218. In both cases, the applicant had a diminished expectation of privacy due to the amount of personal information already disclosed in the application process. Willner, 928 F.2d at 1189-90 (applicant required to

Page 11 - OPINION AND ORDER

complete "Questionnaire for Sensitive Positions," permit release of federal income tax returns, be fingerprinted, and have the FBI confirm information). Indeed, the Loder court emphasized its finding that "a drug testing requirement imposes a lesser intrusion on reasonable expectations of privacy when the drug test is conducted as part of a lawful preemployment medical examination that a job applicant is, in any event, required to undergo." Loder, 927 P.2d at 1222. The applicant's privacy expectations were considered to be "significantly diminished" or "minimal." Willner, 928 F.2d at 1193; Loder, 927 P.2d at 1226. No such circumstances exist here.[2]

Finally, defendants argue that an applicant has a reduced expectation of privacy as compared with a current employee because an applicant can choose whether or not to work for a drug-testing employer. See Willner, 928 F.2d at 1189-90 ("If individuals view drug testing as an indignity to be avoided, they need only refrain from applying"). Nevertheless, even if an applicant has a reduced expectation of privacy as compared with a current employee, in balancing the interests in this case, the City's sole interest in what comes down to economic efficiency is insufficient to outweigh the burden upon individual privacy. The City's policy is unreasonable, and therefore it violates the Fourth Amendment of the United States Constitution and Article I, Section 9 of the Oregon Constitution.

  B.  <u>Whether the City's Release and Waiver Form Violates the Fourteenth Amendment</u>

---

[2] I do note that the City's policy does require prospective employees receiving a conditional offer of employment for a *full-time position* to take a job-related medical examination. O'Kasey Aff., Sprauer Depo., Ex. 1 at 12. Neither party has addressed this provision, however. This Opinion does not address whether the drug policy is unconstitutional when required as part of a job-related medical examination.

Plaintiff takes issue with the fact that the City requires an advance waiver of due process rights as a condition of employment. Plaintiff also challenges the release language as an infringement on her right of access to the courts.

The City's Release and Waiver form provides in relevant part: "I specifically and permanently waive any rights I may have to review or inspect any and all of the information developed in this [background] investigation." Lanier Dec. Ex. 2 at 4. Plaintiff argues she has a due process right to confirm the accuracy of the information gathered by the City, and this form requires her to waive that right as a condition of employment.

It appears plaintiff argues the City's Release and Waiver form violates the doctrine of unconstitutional conditions. "The doctrine of unconstitutional conditions provides that the Government cannot condition the receipt of a government benefit on waiver of a constitutionally protected right. It functions to insure that the Government may not indirectly accomplish a restriction on constitutional rights which it is powerless to decree directly." Louisiana Pacific Corp. v. Beazer Materials & Services, Inc., 842 F. Supp. 1243, 1248 (E.D. Cal. 1994). Prior to examining the purported unconstitutional condition, I must "first examine the validity of the underlying alleged constitutional rights." Vance v. Barrett, 345 F.3d 1083, 1088 (9th Cir. 2003).

If the City can legally refuse to allow plaintiff as a prospective employee or a current employee, since the waiver is permanent, to review or inspect information developed in an investigation, plaintiff has not made out a claim that she is being asked to waive a constitutional right in order to gain a government benefit. See id. Plaintiff claims she is being asked to waive a due process right. In order to assert a valid due process claim, plaintiff must establish that the interest asserted is a liberty or property interest protected by the Fourteenth Amendment. Matthews v. Harney County Or., School Dist. No. 4, 819 F.2d 889, 891 (9th Cir. 1987)

Page 13 - OPINION AND ORDER

A public employee whose position is at-will has no constitutionally protected property right to her job. Lawson v. Umatilla County, 139 F.3d 690, 692 (9th Cir. 1998). Since plaintiff applied for an at-will position, the condition is not unconstitutional as it applies to her.

An at-will employee has a liberty interest and is entitled to a name-clearing hearing, but only "if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination." Brady v. Gebbie, 859 F.2d 1543, 1553 (9th Cir. 1988). Plaintiff has not alleged any facts indicating she has a liberty interest implicated by the waiver.

In addition, plaintiff asserts that conditioning her employment on her advance waiver and release of "the City of Woodburn, its officers, agents and employees from any liability or damages that may result from furnishing the information requested" violates her due process right to access the courts.

Conditioning a government benefit on the waiver of judicial review might constitute an unconstitutional condition. See Beazer Materials, 842 F. Supp. at 1252 ("Government action violates due process not only when it completely denies the opportunity for judicial review, but also when the penalties for disobedience are so enormous that they intimidate a potential challenger from exercising its right of access to the courts"); Hall v. Ochs, 817 F.2d 920 (1st Cir. 1987).

I agree with plaintiff that the release is broadly worded. However, I accept defendants' limiting construction and read the release, in the context of the entire document, to mean that an applicant who signs the Release and Waiver Form agrees to release the City from liability resulting from the conduct of those furnishing the information to the City only. However, I urge defendants to amend the language of the waiver to incorporate the meaning to which they and I

Page 14 - OPINION AND ORDER

ascribe to it. If plaintiff remains unsatisfied by this limiting construction, I give plaintiff leave to raise the issue again.

III.     Whether Defendant Sprauer is Entitled to Qualified Immunity

Defendants assert that defendant Sprauer is entitled to qualified immunity because she did not act in violation of any clearly established law.

The Supreme Court formulated the following objective qualified immunity standard:

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The qualified immunity defense protects all government officials except those who are "plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). A ruling on the defense should be made early in the proceedings so that the costs and expenses of trial are avoided if the defense is dispositive. Saucier v. Katz, 533 U.S. 194, 200, 121 S. Ct. 2151 (2001).

Courts use a three-step test to determine if a defendant is entitled to qualified immunity on a federal constitutional claim. First, the court determines if the facts alleged, viewed in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a constitutional right. Brown v. Li, 308 F.3d 939, 946-47 (9th Cir. 2002), cert. denied, 538 U.S. 908 (2003) (relying on Saucier). If the facts show a constitutional violation, the court decides if the constitutional right at stake was clearly established at the time of the alleged violation. If so, the final inquiry is whether an objectively reasonable government actor would have known that his conduct violated the plaintiff's constitutional right. Id. at 947. Plaintiff has the burden of proving that a right is clearly established. Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002).

I find that there is no decision in the Supreme Court or the Ninth Circuit addressing the constitutionality of pre-employment, post-offer warrantless drug and alcohol testing. The application of Chandler here is not necessarily self-evident. Indeed, even a recent employment treatise indicates, "It is still too early to make a definitive determination of the effect that the Supreme Court's decision in Chandler v. Miller will have on the analysis of lower courts considering constitutional challenges to public employer drug testing programs." 1 Empl. Privacy Law § 3:8.90 (updated June 2005). Therefore, I find Sprauer is entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, I grant in part and deny in part Plaintiff's Motion for Summary Judgment (#11), deny in part and grant in part Defendants' Motion for Summary Judgment (#16), and deny Plaintiff's Motion to Strike (#31). At the telephone conference scheduled for Wednesday, November 16, the parties should be prepared to discuss plaintiff's request for an award of compensatory damages, to be established at trial, and plaintiff's other requested relief.

IT IS SO ORDERED.

Dated this _____14th_____ day of November, 2005.

                                                /s/ Garr M. King
                                                Garr M. King
                                                United States District Judge